Judge Buckner,
delivered the opinion of the court.
This was abill in chancery, bled on the 5th of February, 1828, by Warfield; against Loudon, in the Fayette circuit court, to restrain the commission of waste, in which he alleges - that David Todd and wife bad leased to Loudon, a tract of land, in that county, for one year, commencing on the 16th of February, 1827; that.Todd and wife had .conveyed the land to him, Warfield, by deed, bearing date on the. 12th of November, 1827, which was accepted, by him, ©n the-26th of January, 1828; and that Loudon was committing waste, by cutting good rail timber, into cord-wood, and had threatened to convert it to his use by sale, &c. An injunction was granted, restraining' the commission of further waste.
Loudon, in his answer, denies the commission of waste, insisting that by his contract with Todd, which he exhibits, he had a right to use the lying down timber. He admits that he had made rails and some posts out of a part of it, but says, that he had not violated his contract, and that Warfield’s hill contained no equity, &c.
Upon a hearing of the- cause, the circuit court perpetuated the injunction, with costs; and Loudon prosecutes this writ of error to reverse the decree»
We shall not attempt to enter into a general disquisition of the doctrine, upon the subject of waste, and of the remedies at common law, and by statute; because ^ ^together unnecessary to do so, in this case. It is sufficient, in general terms, to say, that a tenant is guilty of waste, when, without license or authority trom his landlord, he performs any act which does a lasting damage to the freehold. He may, in the language of the law writers, on the subject, take sufficient estovers of common right, for.plow-bote, fire.-bote, and other house-bote, unless restrained by particular covenants or exceptions. But he has no right, in virtue of fits tenancy, to sell timber to others-
*197 It is said in Coke on- Littleton, lib. I, 53, “the tenant cutteth down trees for reparations, and selleth them, and after, buyeth them again, and employs them about necessary reparations, yet it is waste, by the vendition ,• he cannot sell trees, and: with the money cover houses,” « &C.
The allegations of the bill, therefore, respecting .Loudon’s threats to sell timber, which he had cut on the land, independently of the statements, as to the actual commission of waste, were sufficient to authorize the granting of the injunction. Ini Maddock’s Chan-eery, 138, it is said, “injunctions to stay waste are fre-iquently applied for, in chancery; and have, in.practice, superseded the common law remedy, by writ of es-trepement; and the additional remedy, by means of th at writ, given by the statute of Gloucester. And a mere threat to commit waste, is sufficient to ground an injunction upon; it not being necessary for the party to wait till the waste is actually done; see, also, Gibson vs. Smith, II Atk., 183.
Wedo not, however, concur in opinión, with thecircuit court, as to the propriety of perpetuating the injunction, and subjecting-Loudon to the payment of costs; because there is an entire absence of proof to support the allegations of the bill, as to the sale of * the land and execution of the deed by Todd and wife, to the defendant in error. Loudon does not expressly deny, that the legal title to the land was vested in Warfield, nor that the deed referred to had been executed. But the execution of such a deed is not a matter presumed to bo within his knowledge, and cannot, therefore, be taken as a fact, unless it be established by proof. Warfield, in his bill, alleges that Todd and wife had filed a-bill against Loudon, and had obtained an injunction against him, restraining him from committing waste on the land, which bill and proceedings on it, are referred to, and the bill, with the injunction, is made apart of this record. But the answer of Lou-don, to Todd's bill, was not then filed, nor had any step in the suit been, at that time, taken, except the filing of the bill with the injunction; nor is-any other paper prayed, when filed, to be considered as an exhibit In this case.
No part of the record, in the suit of Todd, except his bill and the injunction, was read on the trial of this *198 case. It is clear, therefore, that Warfield failed to show that he was the owner of the land, or that Lou-don was his tenant.
In general, he only, who is entitled in remainder or reversion to the inheritance, can maintain an action for waste.
He, who has no title to the land, is not entitled to an injunction to restrain •waste.
Waste is ofthe nature of trespass; and although cases may be found, in the books, on the subject, in which it is said, that an action for waste may be maintained, by a person, who has not the remainder or reversion of the inneritance, after the termination of the estate for life or years; as, for example, he who has a right of common, in ihe place wasted; yet, in most cases, he, onlj', to whom, in remainder or reversion, the inheritance up pertains in expectancy, has a right to the action of waste. He, thesefoie, who has no title to the-land, cannot be entitled to an injunction restraining waste; and Warfield does not show that he had any title, legal or equitable, unless the unsupported allegations of his bill be takenas true. Indeed, the proceeding, by bill in chancery, seems, according to the modem practice, not only to have superseded the writ of cs~ trepement, hut to supply, to a certain extent, the place of the action of waste, for it is said, that where a hill is filed, for an injunction to stay waste, and waste has been already committed, the court, to prevent multiplicity of suits, will not oblige the party to bring an action at law, but will decree an accountand satisfaction for what is passed; see the case of Jesus College vs. Bloom, III Atk., 262, and I Haddock’s Chan., 148. Whether the remark, in the case of Downing, Heydell, &c. vs. Palmateer, I Mon., 64, should be considered as conflicting with this doctrine, so far as it relates to a decree giving compensation for the waste committed, need not be here inquired into, because the decree, in this, was for costs only. We do not suppose however, that it was so intended by the court, in that case.
In II Haddock’s Chan., 281, it is said: “To obtain an injunction for waste, it must appear to bo a case of irreparable mischief, to a person, w!>o swears to iiis title ; information and belief, as to the title, will not do; there must be positive evidence of actual title. Nor is it sufficient to swear that you are credibly informed the defendant intends to commit waste; bnt it must be proved, either that he laid the axe at the root of the tree, or some other person must swear, that he threatened to do it.”
*199 In this case, we have already remarked, that the bill contains the necessary allegations as to title; hut they aieneitner acknowledged nor proved. The deed under which TVarñeld claims, ought ¡o have been exhibited on the trial; but it was not idled, nor was any such deed used.
But the pioof in the cause, in other respects, seems to have been insufficient to warrant a decree against the plaintiff in error, tty hether ! e had, at any time during the year for w.tich he had rented the land, committed waste, is not necessary to bo decided.
By the contract between him and Todd, he had the right to use the lying down timber on the ground; but was to cut down no tree, dead or alive. It is proved, that before the suit of Todd and wife against Loudon was instituted, he had sold timber taken from the leased premises, and that when applied to, on the subject, he threatened to continue to do so, insisting, that under his contract of lease, he had a right to do it. But an injunction, at the instance of Todd, had been served upon him, previous to the institution of this suit, restraining him from continuing to cut and remove wood from the land; and it does not appear that he had acted in contempt of the authority of the chancellor, by disregarding his order; nor that he had subsequently made any additional threats. Conceding, then, for argument sake, that by Ids contract, he had no right to sell the timber fit for rails, which was lying on the ground, at the commencement of his lease, (which we-do not wish to be considered as decided,) there could, nevertheless, exist no necessity for a second injunction, whilst the first was in force, to restrain him from doing that, to prevent which, the arm of the chancellor had already been extended. Otherwise, in case twenty different conveyances had taken place, he might have been subjected to the vexation of having as many injunctions or restraining orders served upon him.
Judge Underwood is, moreover, of opinion, that if Warfield had proved title, he ivas not, on the merits of the case, entitled to a perpetuation of the injunction, and a decree for costs.
-Chinn, for plaintiff; Mills and Brown, for defendant.
The decree of the circuit court must be reversed, and the cause remanded to that court, with directions to dism¡ss the bill with costs.
The counsel for Warfield, presented the following petition for a re-hearing of both the above case and the preceding case of Loudon vs. Todd, et ux. ante, 182.
The counsel for defendant in error, in the case of Warfield, were not hitherto engaged in the case of Todd and wife; but are advised by letter from their client, since, that the iirst case would have been submitted to tiieir care, had he known of its pendency. The court will observe, 'that the proceeding against Todd and wifis by simple writ of error and publication, of course unknown to Warfield for whose benefit botli were prosecuted, and unobserved by counsel. In Warfield’s case, there is a reference to the suit of Todd, but the converse is not true. It must be more by good luck than any thing else, if Loudon can escapo in both cases. .The decision of both is reduced to a few questions, and some of them we are convinced, is against Loudon, and therefore, a reconsideration of one or both is requested.
It is not intended to question the position assumed by the court, that a deed sealed in November, might have relation when received in the ensuing January. But it is not intended to admit that a deed executed without the knowledge or consent of the vendee would thus relate: A living in one state, executes a deed to B, without any prev ous negotiation, and sends .it to his agent or friend advising him to go and offer it to B, if B will pay the consideration, and if B agrees to do so, then to deliver it. It is believed none of the cases go so far as to say such a deed would have relation. They all apply to cases, where, by previous arrangement, agreement or contract, the deed was to be executed as in the case cited by the court, or where 'by agreement and with the knowledge of both parties, the deed is delivered as an escrow to a third person. That there was such agreement previously in this case, or that the vendee knew of it,-is not shown. Hence it is conceived, that the court in this case has carried the doctrine further than it has heretofore been carried.
*201 'Suppose, however, that the relation exists, it must have been uncertain whether-Warfield would or would not accept the deed. Iri this slate of'uncertainty who, or which, Warfield or Todd could Sustain or bring the injunction to stay waste, and might Loudon the tenant, go on in this interregnum, and cut and sell as he pleased? Warfield could not bring it, for it would be uncertain whether the deed would be such an ' one as he would accept, or indeed he might not, probably did not know of its existence. Todd and wife could'not prudently do it, for the acceptance of the deed, as the ‘ court has said, might defeat their complaint. The right of suit must then, have been in abeyance as it were, and Loudon would be free from all restraint. This -conclusion cannot be admitted, and- it must consequently follow, that in this uncertainty, during the transit of the deed, Todd and wife could and had the right to their injunction to protect the land. There is no escape from this, but in one of-two ways, and one is, by saying that Warfield had the right'to the suit when he had no title, and did not and could not know that he ever should have any; or to say that nobody had, arid Loudon was free from all restraint. Allowing Todd ■and wife to have it as we insist, the- only consequence that could follow, on Warfield’s accepting the conveyance even if it had relation, would be, to -lessen the account of Todd and wifeagáinst -Loudon, on the final decree, and only to give them an account and recovery of as much waste, as had taken place at the date of the deed, and leave Warfield, the grantor of the deed to recover all that was -committed after the dáte of the -deed, by his suit, if he brought one as he really did. We do not, therefore, see the danger of the result spoken of by the court, that there might be twenty suits if there were twenty sales and conveyances. Each one while he held the title, if the -tenant was committing waste might bring his bill, and so might each subsequent grantee, if the tenant continued the waste. All that each deed coald do, would be to stop tiie account of •the grantor when the land was conveyed, and the tenant could not complain that he was taxed with the costs of the twenty suits, when he obstinately persisted in the wrong, by sinning against each grantee.
it^the bill then of Todd and wife was rightly brought . at the time it was, as we contend was the case, from. ’ *202 the foregoing principles, Loudon, by showing the con-. veyance could only abate so much of his recovery' for fljg was|e as ho made after the deed, and yet the court 'has notonly allowed him to abate the whole complaint, hut to recover his costs into the bargain! On the contrary, we insist, that in every injunction rightfully brought, although the grounds.and causes of it may be removed by subsequent occurrences, yet the complainant shall’recover his costs, as the costs still remain as a matter of controversy.
But the cost here is not all, for it will be seen, by ' scanning the proof, that Loudon committed some of -the waste before the date of the deed,’ by cutting and! selling timber, and the court admits that to be waste. The posts and rails sold to Combs, as well as other instances, was before the date of the deed, Warfield cannot recover for this; Todd and wife, the court says, cannot; but must pay costs for attempting it, and Lou--don ©scapes with impunity.
Besides the doctrine of relation of deeds, and other “acts, is but a fiction of law; a positive rule, adopted ■ only to save and confirm estates, prevent chasms and the like. But it is a well settled principle, that a fiction shall not be allowed to destroy, and affect vested ' rights,' orbe applied to any other cases, than the purposes for which it was invented. We submit to the court, whether it has not been 'applied here to defeat ’the e'xisting right to recover for waste committed before the date of the deed, and to restrain it during un«* certainty, and to allow the wrong doer to escape justice.
For these reasons, we do conceive, that the case" of Todd and wife, ought to be reviewed by the court, But when we consider the case of Warfield, the hardship -is still greater. Loudon escapes all his waste, even before the deed, in the case of Todd and wife, because, during his progress in wrong, Todd and wife conveyed their title and cause of complaint to War-field, and yet he escapes from Warfield, because the latter has neither title nor cause of complaint, and all ■this, because this court cannot notice one record in de-ciding the other, as the court below did, and was4>ound to .do. Suppose A has his bill against C depending in the court below, to recover a tract of land ’ or .lot of ground which C has covenanted to convey to him, and *203 B hás- also, bis bill depending on the same docket, to recover the same land from C, by virtue of an adverse claim. . B’s case comes on first, and he recovers the whole land, and A’s is then tried by the same chancellor next} would it- -be right, that C should be decreed to convey the land to A and. he subjected to attachment And interminable imprisonment, if he did not do so, when he had first been decreed to convey it to C and had done sot Certainly it would be right for the court to refuse a decree, because the-thing was first disposed of by the same judge, and.nothing was left to he conveyed. Such, or similar, was the situation of the parties here. There was a continued waste of -Loudon, the recompense for which, in part, belonged to Todd and wife, and part to Warfield. - The court-below did not give Todd and wife as much as they were entitled to, but only their costs, and decreed the amount to Warfield. Into both records, the court below was. bóutíd to look, and so is.this court..
' The identity of the subject, however, is not -the only thing here which constrains the court to notice both at: once, and connects them together. Other circumstances do this. Not only are the counsel identical who sign the pleadings, but both cases are submitted to-the court on the same day, and decided On the same: day, and probably atthe same moment; Also, it will, be found that the depositions are the' same literatim et verbatim, with the exception of two, to-wit: Scott’s and Gratz’s, which appear in one and not in the other. What is more, the captions of all the depositions taken, ■ show expressly that they were taken to be read in each or. both suits, and were so read, and it is, therefore, evident, that the parties treated the causes" together in their preparation, and that the depositions are filed in but one only, or part in one and part in another; and the clerk, when he made out these copies, took the de-: positions out of one and copied them in both, and by mistake, left out, in one of these .records, the depositions of Scott and Gratz, one of which,. at-, least, was taken by Loudon himself. There is no escaping from this conclusion* unless we suppose that the magistrate made out two copieson the same day. This supposition is repelled by the caption.. For if the magistrate made out a copy for each suit, he would have put in the caption of each, for which suit it was expressly design *204 ed ; and, moreover, as there is but one copy of the depositions of Scott and Gratz, it shows there was but one copy of all.
Now, when we add to all this, that there is an express reference in Warfield’s record’to that of Todd, they are connected at once. The court, however, got over this, by limiting the'word's “proceedings,” to- the proceedings on Todd’s bill, which had actually taken place, as the clerk has done in copying, and excluding the residue, and not the whole “proceedings,” as they should enlarge from time to time, till the close. This, strict construction of the references becomes more important, as it touches, a point of practice, in this court, worth noticing.
It is respectfully contended, that this strictness destroys the effect of the reference, and renders it useless.' There could be no motive in the writer of Warfield’s, bill to insert only the “proceedings” which had taken place. They were of no use to him. They could neither aid or destroy his cause of complaint, or inter-: fere with it. But as the suit referred to should progress, it might interfere with and divide the recovery as above stated, and this is the design of the reference, it is to give each complainant that to which he was entitled, and no more,- and: subject the defendant to no more than justice..
It is respectfully contended, that in looking into any ^■proceedings,” the chancellor will not shut his ej-es at any point, and say, “thus far will I look but no farther. I must shut myeyes-upon the balance, because the party introducing the evidence has not told me to look at the resí, although the whole is an unit.” If the matter referred to, is to. be used as evidence at all, the whole will be looked-into- And this rule property applies to record evidence, when the record is in a state of progression and not completed. A deed, document, or even a judgment is not increasing. But the “proceedings” of a pending suit is, in its nature, progressive and-increasing, and for this very reason, a reference to it, from its nature, includes the increase. This is emphatically true, when one of these records is evidence in the other. The land Is the same; the defendant the same, as well as the injury; and although the complainants are not identical, yet they are privies, as Warfield holds under Todd and wife, and the point in *205 issue is the same. The reference must; their, of necessity, prove all. Add to this, copies of records of the sainé court are not strictly evidence, though frequently used by consent for convenience. The originals in the same court is alone admissible. This reference, therefore, ought not to be construed to copies then made out, and filed on the filing of Warfield’s bill, but to the originals themselves, as copies could not be used in a different court; and the same chancellor cannot, therefore, be compelled to shut his eyes at any one point of his proceedings, especially, when he is told that his own “proceedings” is referred to. This court has been liberal itself, when a record is referred to, on file here, to use it, although it be not copied as part of the-immediate record before it. A record of a judgment pt law, if filed here, has always been read, when necessary, as evidence, on trying an injunction on the same judgment, although not expressly made part of the chancery pleadings. But an instance of this court noticing one record of the same inferior court, when trying another, and taking evidence therefrom, will be found in McIlheny vs. Biggerstaff, III Litt. Rep., 155.
If then, the whole record in Todd’s case can and ought to be noticed in Warfield’s, as we contend it ought, it follows that Warfield has a title, and Loudon knew it when he answered Warfield’s bill, and, therefore, a decree ought to go against him. One other reference to Todd’s case in Warfield’s, which was omitted in its proper place, will now be added. The opin-. ion of the court below, in Warfield’s case, refers to the deed to Warfield, by its express date of delivery, ana this was evidently taken from the admission of the parties in Todd’s case, and could be gotten no where else. For, if this court suppose the deed on file, and omitted by the clerk, they ought, according to the practice, to send ex officio for a certiorari in affirmance of the decrecí But if the deed was on file, it would only show its written da.te, and not the day of delivery; and it is the latter which is quoted by the court below, as admitted by Todd’s answer to interrogatories by Todd in the other suit. This last circumstance may be called concl usive* We, therefore, with confidence, hope that both, or at all events one of these cases, will be re-heard, and that Loudon will not be suffered to escape by accident, when he could not have escaped in the court below. A re-hearing is, therefore, solicited.
*206 The court, «pora consideration of the petition, delivered the • following opinion.
We-have carefully examined. the petition in these cases* The statements of the facts are not made with entire accuracy; but, as in each opinion delivered, a full and correct history of them is given, we shall not enter into, a re-examination of them, by way of response.
Perceiving no ground for a change of either opinion,^ the petition is overruled, the chief justice dissenting.
Chief justice Robertson dissented from the opinion of. the majority of the court, in the above case,.and délivered his own opinion as follows.
Todd, who leased the land to-Loudon, has failed in his suit, because he. had conveyed; to Warfield. This tact is shown by Loudon’s answer, alone, to. Todd’s bill.
Warfield then claimed the right to injoin waste. He alleges that Todd had conveyed to him, and that, therefore, in consequence of the privity of estate, Lou-don had become his tenant; and he prays that the bill' and proceedings in Todd’s case, may be considered as-exhibits in his case.
Loudon’s answer does not deny that Todd had conveyed to Warfield, nor that Loudon had become War-field’s tenant, but resists the alleged equity, on the plea, that, by the lease, he (Loudon) had aright to all the. fallen timber!
Now, I must presume that Loudon knew whose tenant he was; and that consequently, his answer virtually admits that he was the tenant of Warfield. Besides,, the two suits progressed, in the same court, paripassu, and I dp not feel authorized to doubt, that they were considered by the parties as consolidated, and that,, therefore, Loudon’s answer to Todd’s bill, wherein he disclaimed holding under Todd, and took refuge under.Warfield, was used on the hearing of Warfield’s case..
I cannot, therefore, consent, that by any nice or subtle application of strict technicality, the tenant should, escape from both Todd and Warfield. I am satisfied that his contract gave him the right only to use,.not to sell the fallen timber. He was restricted in his use to the fallen timber. But his right was usufructuary xperely, and not proprietary. And I am equally well *207 satisfied, that Warfield had a right to a perpetuation "of his injunction.
Loudon had sold timber, and insisted that he had a right to do so. When Todd conveyed the title, he could not longer maintain his injunction; and Warfield was not bound to wait until Loudon should again commit waste. His object was prevention; and he had good cause for apprehending that an injunction in his own right was necessary. But even if it were admitted that his bill was filed prematurely, (which I do not concede,) he had a right, on the hearing; to a perpetuation of his injunction, as Todd’s injunction was ineffectual.
I cannot, therefore, concur in the opinion of the majority of the court, which reverses the decree of the circuit court, because Warfield’s deed is not filed, or because Loudon’s answer to Todd’s bill is not copied in this record. I consider his answer, in this case, as alone sufficient to authorize the decree. But if it were not sufficient, I feel authorized, for reasons which have been suggested, to look into the other record, also before us, and which was, I have no right to doubt, used in this case, in the inferior court; or was there considered by the parties, as evidence in this case. These hasty suggestions exhibit the outline of my objections to the opinion rendered.